# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| OSCAR THOMAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 02-1743 (RMC) |
| | ) | |
| R. JAMES NICHOLSON, Secretary, | ) | |
| Department of Veterans Affairs, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

Plaintiff Oscar Thomas is a retired Army veteran who has, with mixed success, repeatedly sought benefit payments from the Department of Veterans Affairs ("VA") for physical and mental health conditions that he believes are connected to his military service. In this case, brought *pro se*, he sues R. James Nicholson, Secretary of VA,[1] raising malpractice and other tort claims based on a medical examination conducted by a VA doctor in 1991 and his visits to the VA Medical Center in Memphis, Tennessee. The VA moves to dismiss, and to the extent any claim survives dismissal, the VA seeks summary judgment. *See* [Dkt. #121].

The Court will grant the motion to dismiss based on the failure to exhaust administrative remedies under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671

---

[1] Mr. Nicholson, sued in his official capacity, was substituted for his predecessor, Anthony J. Principi, the former Secretary of the Department of Veterans Affairs, pursuant to Federal Rule of Civil Procedure 25(d)(1). While the original Complaint [Dkt. #1] named Mr. Principi, the First Amended Complaint [Dkt. #51] names Mr. Nicholson. Because Mr. Nicholson was sued in his official capacity, the United States is the appropriate defendant and proceeds here accordingly. Mr. Thomas's argument that the United States is not a proper defendant because the Attorney General failed to file a scope-of-employment certificate is without merit.

*et seq.*  Further, summary judgment will be granted to the VA on the claims surrounding the failure of Memphis VAMC to provide medical attention to Mr. Thomas in November 2002.  With this disposition, all other pending motions will be denied as moot.[2]

## I. FACTS

Mr. Thomas filed a claim for disability compensation with the VA on August 14, 1989, based, in part, on anxiety neurosis.  As a result, on March 5, 1991, he was examined by Dr. A.R. Kelly, a VA psychiatrist at the Washington, D.C., VA Medical Center.  In his report of the examination, Dr. Kelly noted that Mr. Thomas had complained of regularly hearing voices in his head since about 1978 or 1979, which had persisted up to the date of the examination.  However, because Mr. Thomas had "no other particular signs of schizophrenia," Dr. Kelly stated only that "a diagnosis of schizophrenia probably is the most likely correct diagnosis" without making a definite diagnosis.  Def.'s Mem. in Supp. of Mot. to Dismiss or For Summ. J. [Dkt. #121] ("Def.'s Mem."), Ex. 2.  Critically, however, he did not share this possible diagnosis with Mr. Thomas.

By a rating decision dated August 2, 1991, the VA granted Mr. Thomas a 40% combined disability rating for those conditions it determined to be service connected.  Def.'s Mem., Ex. 3.  It stated that "[s]ervice connection is denied for anxiety neurosis, as the last psychiatric

---

[2] Pending at this time are numerous motions, including:  Plaintiff's Motion for Judgment on the Pleadings [Dkt. #94]; Plaintiff's Motion for Sanctions [Dkt. #95]; Plaintiff's Second Renewed Motion for Partial Summary Judgment [Dkt. #96]; Plaintiff's Motion for Sanctions [Dkt. #99]; and Plaintiff's Motion to Strike [Dkt. #145].  The motion to strike is part of Plaintiff's Opposition [Dkt. #131].

Mr. Thomas mistakenly asserts in his Opposition (*see* Pl.'s Opp. at 2) that various other motions he filed remain pending, when in fact they were stricken or denied:  Pl.'s Renewed Cross-Motion for Partial Summ. J. [Dkt. #69], which was stricken by Order [Dkt. # 73]; Pl.'s First Mot. for Reconsideration [Dkt. #76], which was denied by Order [Dkt. #81]; Pl.'s Second Mot. for Reconsideration [Dkt. # 82], which was denied by Minute Order on Dec. 5, 2006; and Pl.'s [Third] Mot. for Reconsideration [Dkt. #109, set forth in Dkt. #92], which was denied by Order [Dkt. #151].

examination in service made no diagnosis regarding the veteran's mental status [and] [o]n the VA exam [conducted by Dr. Kelly], a final diagnosis was not made." *Id.* The August 1991 rating decision also did not mention the possibility that Mr. Thomas suffered from schizophrenia. The VA sent a Notification Letter on August 19, 1991, Def.'s Mem., Ex. 6, to Mr. Thomas's Service Representative, the Non-Commissioned Officers Association, which sent it to Mr. Thomas. *See* Plaintiff's Second Renewed Statement of Material Facts as to Which There Can Be No Genuine Dispute [Dkt. #96] ("Pl.'s Facts") ¶¶ 10-11.

Mr. Thomas filed what he deemed to be new material evidence in support of his claims of a service-connected disability on April 14, 1994. Def.'s Mem., Ex. 9. The Ratings Office found that the evidence submitted was not new and that it had been previously considered. *Id.*, Ex. 10. On November 10, 1999, Mr. Thomas appealed the adverse ratings decision to the Board of Veterans Appeals. In the course of various disagreements over the Rating Office's determinations, Mr. Thomas received the VA's Statement of the Case ("SOC"). The SOC informed Mr. Thomas for the first time that the VA had identified a "working diagnosis" of schizophrenia on March 5, 1991.[3]

Thereafter, on October 11, 2001, Mr. Thomas filed an administrative claim on Form SF 95 with the U.S. Army Office of the Staff Judge Advocate, 1st Infantry Division, Katterbach Law Center, Germany, alleging that he had found out on October 27, 1999, that the VA had since August 10, 1991, willfully and intentionally withheld from him information concerning a serious medical condition which had caused him to suffer intentional emotional distress, exacerbation of his condition, and denial of federal and state benefits (the "2001 Claim"). Def.'s Mem., Ex. 14. The

---

[3] The issue of when Mr. Thomas actually received the SOC is discussed *infra*.

VA denied the 2001 Claim on August 26, 2002:

> Under the Federal Tort Claims Act (FTCA), VA is responsible for any negligent or wrongful acts or omissions by VA employees acting within the scope of their employment which have caused death, personal injury, and/or property damage. After reviewing of our files and the materials you submitted in light of the issues you raised in your claims, we have found no such negligent or wrongful acts or omissions. Moreover, determinations regarding veteran's benefits are not reviewable under the FTCA. *See* Title 38 United States Code, Section 511(a). Accordingly, your claims are hereby respectfully denied.

Def.'s Mem., Ex. 24.

Mr. Thomas filed this suit on August 30, 2002, alleging thirteen counts. The District Court dismissed the case on May 28, 2003. Mr. Thomas appealed, and the D.C. Circuit affirmed the dismissal on all but three counts — Counts III, V, and X. With regard to these Counts, the Circuit reversed and remanded, holding that the trial court had jurisdiction to consider non-benefits claims, *i.e.*, "whether the alleged withholding of the diagnosis [of schizophrenia] states a tort claim." *Thomas v. Principi*, 394 F.3d 970, 974 (D.C. Cir. 2005); *see also United States v. Brown*, 348 U.S. 110 (1954) (a veteran may maintain an action under the FTCA for negligent treatment at a VA medical center even if his benefits have already been increased because of such injury); *Glarner v. U.S. Dep't of Veterans Admin.*, 30 F.3d 697 (6th Cir. 1994).

On remand, Mr. Thomas filed a First Amended Complaint on March 1, 2006. The First Amended Complaint[4] alleges the following Counts:

---

[4] The original complaint named the Secretary as well as numerous VA employees as defendants. The First Amended Complaint dropped the VA employees as defendants and named only the Secretary and three John Does. The Court dismissed the John Doe defendants on August 6, 2007. *See* Defs.' Mot. to Dismiss [Dkt. #111] and Order [Dkt. #133]. Thus, the only remaining defendant is the Secretary.

-4-

Count I, failure to diagnose, inform, warn, and/or refer for treatment based on:
    a. schizophrenia
    b. major depression
    c. PTSD
    d. Type B personality disorder
    e. brain cancer or disease
    f. arterial sclerosis
    g. cerebral sclerosis
    h. HWS syndrome
    i. sleeplessness
    j. insomnia
    k. GAF or 55 - 60 [sic]
    l. medical complaints of November 2002
    m. severe personality disorder, somatization, fatigue,
       nummular eczema, and bronchitis
    n. paralysis
    o. psychiatric examination of November 4 and/or 15, 2002
    p. medical examination of November 8, 2000
    q. medical examination of November 4 and/or 15, 2002
    r. concealment
    s. reliance
    t. PTSD examination of July 23 and 24, 2003

Count II, gross negligence;

Count III, intentional infliction of emotional distress; and

Count IV, negligent infliction of emotional distress.

The First Amended Complaint contains allegations relating to events that occurred after the original complaint was filed on August 30, 2002. First, Mr. Thomas asserts that he visited the VA Medical Center in Memphis, Tennessee ("Memphis VAMC"), on November 4 and 15, 2002. He states that he went to the Medical Center "seeking assessment, evaluation and treatment for very severe chronic mental, physical complaints surrounding dizziness, blurred vision, fear and a feeling lightheadedness . . . and a feeling of almost drifting in and out of consciousness/subconsciousness and the need of urgent medical treatment, to include psychiatric evaluation and/or treatment." Def.'s

Mem., Ex. 25 at 1-2.  Memphis VAMC declined to provide medical services because his conditions did "not show[] current acuteness."  *Id.* at 2.  Thereafter, on a plane back to Germany, Mr. Thomas collapsed and experienced severe breathing problems.  He was "strapped on/into a crew member's jump seat, where a heavy oxygen bottle was strapped around [his] neck and an oxygen mask placed over [his] nose and mouth, where [he] remained" for a great portion of the flight.  *Id.*  Mr. Thomas filed an FTCA claim based on this incident on November 30, 2002.  *Id*.; *see generally*, Counts I.l, I.o, and I.q.

Mr. Thomas submitted yet another administrative claim on March 14, 2003 (the "2003 Claim").  Mr. Thomas faxed an SF 95 claiming $10 million in damages to the VA Office of Regional Counsel in Washington, D.C., alleging:

> The VA and VA doctors failed to evaluate/diagnose, properly diagnose, inform, disclose, warn, treat, engage claimant in a process of inform[ed] consent, or refer claimant for treatment from March 5, 1991 to the present, for the following conditions:
>
> 1) Photophobia, 2) Cervical muscle and trapezius spasms, 3) failed to conduct Orthopedic examination, evaluate and diagnose orthopedic problems; 4) nummular eczema; 5) extreme fatigue; 6) constant tinnitus in both ears, Myositis of the shoulders; 7) Migratory Arthralgias and Tenosynovitis (pain in all joints); 8) Flexor Tender Ganglion of both hands; 9) Myofascial Pain; 10) Back, Right Flank and Musculosketal Pain; 11) A severe Personality Disorder; 12) Mental Stress; 13) Anxiety Neurosis with Somatization; 14) Somatic Concerns of a Chronic Nature; 15) Schizophrenia with Auditory Hallucinations; 16) Arthralgias of the Knees; 17) Bronchitis, Paryngitis, Laryngitis and Tonsillitis; 18) Numbness of Left Forearm, hand, leg, and arm. (See VA Rating Decision of 8-2-91); and for PTSD, Major Depressions and other complaints.

Def.'s Mem., Ex. 26.[5]

Mr. Thomas also complains about a July 24, 2003, medical examination at Memphis VAMC. *See* First Am. Compl. ¶ 95.  He alleges that on that date, a VA physician requested that he undergo a medical examination and that he return to the Medical Center the next day for that purpose.  Mr. Thomas contends that this request caused him to collapse in the doctor's office and that he suffered additional injuries and emotional distress. *See generally*, Count I.t.

The VA moved to dismiss or for summary judgment, Mr. Thomas responded, and the VA replied; thus, the case is ripe and ready for decision.  This case was transferred to the undersigned on February 15, 2008.

## II.  LEGAL STANDARDS

### A.  Motion to Dismiss for Lack of Jurisdiction

Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Because subject matter jurisdiction is an Article III as well as a statutory requirement, "no action of the parties can confer subject[]matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003).  On a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing that the court has subject matter jurisdiction. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999); *see also McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 182-83 (1936).

Because subject matter jurisdiction focuses on the court's power to hear the claim,

---

[5] In fact, Mr. Thomas already had been diagnosed with some of these:  somatization on June 14, 1982 and August 7, 1981, and severe personality disorder on February 4, 1980.  Def.'s Mem., Ex. 5.

however, the court must give the plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion for failure to state a claim. *Macharia v. United States*, 334 F.3d 61, 64, 69 (D.C. Cir. 2003).  Moreover, the court is not limited to the allegations contained in the complaint.  *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987).  Instead, to determine whether it has jurisdiction over the claim, the court may consider materials outside the pleadings.  *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

### B.  Summary Judgment

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56 (c); *Anderson v. Liberty Lobby, Inc.*,  477 U.S. 242, 247 (1986); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995).  Moreover, summary judgment is properly granted against a party that "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.  To determine which facts are "material," a court must look to the substantive law on which each claim rests.  *Anderson*, 477 U.S. at 248 (1986).  A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action.  *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable

inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id.* In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999); *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Greene*, 164 F.3d at 675. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

## III.  ANALYSIS

Mr. Thomas advances claims concerning a failure to diagnose, inform, warn, and/or refer for treatment for schizophrenia and numerous other conditions as set forth in his 2001 Claim and his 2003 Claim, both referring to the benefits examination conducted by Dr. Kelly in March 1991. He also alleges failure to diagnose, inform, warn, and/or refer for treatment based on November 2002 and July 2003 visits to Memphis VAMC. The VA asserts that most of Mr. Thomas's claims should be dismissed for failure to exhaust administrative remedies, and, with regard to the November 2002 visits to Memphis VAMC, summary judgment should be granted due to failure to present expert testimony.

### A.  Failure to Exhaust Remedies under the FTCA

Absent a specific waiver, the United States is protected from suit by the doctrine of sovereign immunity.  *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475 (1994).  The FTCA extends a limited waiver of sovereign immunity, which provides a remedy against the Federal Government for some torts committed by federal employees in the scope of their employment.  28 U.S.C. § 1346(b); *Sloan v. Dep't of Housing and Urban Dev.*, 236 F.3d 756, 759 (D.C. Cir. 2001).  The FTCA bars claimants from bringing suit until they have exhausted their administrative remedies.  *McNeil v. United States*, 508 U.S. 106, 113 (1993); *see also* 28 U.S.C. § 2675(a) ("[a]n action shall not be instituted upon a claim against the United States . . . unless the claimant shall have first presented the claim to the appropriate Federal agency.").  The exhaustion requirement is a mandatory jurisdictional prerequisite, *GAF Corp. v. United States*, 818 F.2d 901, 905 (D.C. Cir. 1987); *Jackson v. United States*, 730 F.2d 808, 809 (D.C. Cir. 1984), which the Court cannot excuse.  As Plaintiff, Mr. Thomas bears the burden of proving by a preponderance of the evidence that the Court has subject matter jurisdiction to review his claims.  *See Evans*, 166 F.3d at 647; *see also McNutt*, 298 U.S. at 182-83.

In order to exhaust administrative remedies under the FTCA, a plaintiff must have presented the agency with "(1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation and (2) a sum-certain damages claim," and the agency must have either denied the claim in writing or failed to provide a final disposition within six months of the filing of the claim.  *GAF Corp.*, 818 F.2d at 905; *accord Bembenista v. United States*, 866 F.2d 493, 499 (D.C. Cir. 1989); *Murphy v. United States*, 121 F. Supp. 2d 21, 27 (D.D.C. 2000), *aff'd*, 64 Fed. Appx. 250 (D.C. Cir. 2003).  The claimant must present the administrative claim to the

relevant agency within two years of the claim's accrual.  *See* 28 U.S.C. §§ 2401(b), 2675(a).  A tort

claim accrues "by the time a plaintiff has discovered both his injury and its cause."  *Sexton v. United*

*States*, 832 F.2d 629, 633 (D.C. Cir. 1987).

### 1.  2001 Claim Was Not Timely

The Court will dismiss all claims relating to Mr. Thomas's allegations of failure to

diagnose, inform, warn, and/or refer for treatment for schizophrenia as set forth in his 2001 Claim.

Such claims are based on the benefits examination conducted by Dr. Kelly in March 1991, and Mr.

Thomas failed to file an administrative claim within two years after such claims accrued.

Mr. Thomas argues that the statute of limitations did not begin to run until early 2002

when he received a full copy of his VA medical file in response to his request under the Privacy Act,

5 U.S.C. § 552a, and the Freedom of Information Act, 5 U.S.C. § 552.  He argues that "the

information in the SOC raised curiosity, concerns, misunderstanding and confusion, but provided

absolutely no knowledge, indication or basis to think or believe that there had been anything wrong

other than a mistake or misstatement of facts by the VA; as there was, at the time, no hint or

indication of evidence of a tortious act."  Pl.'s Mem. in Opp. to Def.'s Mot. to Dismiss or for Summ.

J. ("Pl.'s Mem.") at 21.

This argument must fail.  Under D.C. law,[6] a plaintiff is deemed to have discovered

his injury when he knew or reasonably should have known of it.  *Richards v. Duke Univ.*, 480 F.

Supp. 2d 222, 235 (D.D.C. 2007).   Mr. Thomas's 2001 Claim, which he submitted to the Army in

---

[6] Tort claims under the FTCA are reviewed under the substantive tort law of the state in which the alleged tort occurred.  *See Price v. United States*, 228 F.3d 420, 422 (D.C. Cir. 2000); *Tarpeh-Doe v. United States*, 28 F.3d 120, 123 (D.C. Cir. 1994). Mr. Thomas's 2001 Claim is based on allegations of malpractice that occurred in Washington, D.C.

Germany, reveals that he had enough information from the SOC to have known of his alleged injury.

In the 2001 Claim, he alleged:

> On or about August 19, 1991 and for more than 10 years, the US Department of Veterans Affairs and Employees at the Washington DC Regional Office in Washington, DC, by and through their willful, wanton, and intentional negligence, omissions, carelessness, error(s) in judgment and misconduct, has [sic] caused and continues to cause and inflicted [sic] upon me great and serious injuries, harm, pain and intentional emotional distress by their failure(s) to give me notice, failure(s) and refusal(s) to treat and provide me with the standard of care and to warn me of a serious medical condition DVA diagnosed during a regular C&P [Compensation and Pension] examination in August 1991, which DVA willfully and wantonly withheld from me for 10 year[s] or more, and which has also resulted in the development and my sustaining and suffering more serious medical problems than previously existed (permanent impairments); and which has also caused me and my family to be denied numerous State and Federal benefits, loss of income, to include earning capacity.

Def.'s Mem., Ex. 14.  The claim form itself demonstrates that Mr. Thomas had enough information from the SOC to seek money damages in October 2001 for the VA's failure to warn him of the alleged diagnosis of schizophrenia.[7]   Therefore, his claim accrued when he received the SOC and not in 2002 when he received his entire file.

The only direct evidence in the record as to *precisely when* Mr. Thomas received the

---

[7] The Court is puzzled by Mr. Thomas's argument that "it is true, this Court *does not* have subject[]matter jurisdiction over any of Plaintiffs' FTCA claims under the FTCA framework," Pl.'s Mem. at 26, and that "this Court *does not* have subject[]matter jurisdiction over Plaintiff's complaint allegations and claims under the FTCA framework for the reasons already alleged and argued, and the Defendant's and this Court's continued adjudicative proceedings under this framework is both prejudice and injurious to Plaintiff." Pl.'s Mem. at 29.  The Court assumes that Mr. Thomas means to argue that the Court does have jurisdiction over his claims.

SOC is a letter from Mr. Thomas to the VA in Washington, D.C., dated November 2, 1999.[8] That

letter stated:

> The veteran is in receipt of your letter and enclosed
> Decision(s) and Statement of the Case(s), herein not
> included, (received by the veteran on October 9, 1999), for
> an Appeal of an Earlier Effective Dated [sic] for
> compensation purposes based on Individual
> Unemployability, and the denial of service-connection for
> Anxiety Neurosis and other Mental Problems.
>
> The purpose of this correspondence (being sent to you via
> facsimile) is to request a Sixty-day Extension of the time
> limit within which to effect and file my substantial Appeal
> to the Board of Veterans Appeals.

Def.'s Mem., Ex. 47.  Thus, Mr. Thomas acknowledged receiving on October 9, 1999, the VA's

SOC indicating a "working diagnosis" of schizophrenia.

Mr. Thomas does not address this letter or explain why, in November 1999, he

acknowledged receipt of the SOC on October 9, 1999, and then, in connection with the 2001 Claim

asserted that the date he became aware of the SOC on October 27, 1999.  *See* Pl.'s Facts ¶ 12.  Mr.

Thomas further states, in non-affidavit form, that "[o]n October 27, 1999, Plaintiff became alarmed,

mad, outraged, angry, sad, hurt, felt deceived, mistreated, severely emotionally distressed and

shocked of [sic] not having been informed and denied the rights as a patient, and due process right

as a Veteran over many years of this diagnosis, and of having further been denied and deprived of

medical information and treatment over this same long period of time." Pl.'s Facts ¶ 13.

To resolve this question, which goes to the heart of the Court's jurisdiction, the Court

---

[8] Interestingly, Mr. Thomas faxed this letter to the VA's Washington, D.C. Regional Office
(Foreign Unit) in 1999.  It is unclear why he submitted his October 2001 Claim to the Army in
Germany when the claim itself identifies the VA as the responsible department.

may consider affidavits and other exhibits and weigh the conflicting evidence. *See Herbert*, 974 F.2d at 197; *Rann v. Chao*, 154 F. Supp. 2d 61, 64 (D.D.C. 2001), *aff'd* 345 F.3d 192 (D.C. Cir. 2003). The Court finds the November 2, 1999, letter and Mr. Thomas's silence about it compelling evidence that Mr. Thomas received the SOC on October 9, 1999. Thus, this is when his claim accrued and the statute of limitations for him to file an administrative claim began. There is no doubt on this record that Mr. Thomas had sufficient information from the SOC to advance an FTCA claim as his own statements and the 2001 Claim demonstrate. In his own words, he admitted receiving that information on October 9, 1999. Further, his written admission was dated November 2, 1999, just a few weeks after such receipt at a time when the importance of a few days' difference was not apparent. Therefore, a timely FTCA claim had to be made no later than October 9, 2001. Mr. Thomas did not timely file an administrative claim. At the earliest, Mr. Thomas filed his claim with the Army on October 11, 2001.[9]

To reiterate: Mr. Thomas received the SOC on October 9, 1999, which informed him that a potential diagnosis of schizophrenia had been made. He therefore had until October 9, 2001, to file an FTCA claim based on the failure to inform him of this potential diagnosis. He filed the claim on October 11, 2001, after the statute of limitations had run.[10] Because Mr. Thomas failed to

---

[9] The VA contends that administrative filing was timely only if the VA itself received the form by October 9, 2001 and that the VA did not receive the claim until November 14, 2001, when Mr. Thomas faxed it to the VA in Washington, D.C. Mr. Thomas contends that he faxed the form to the VA on October 25, 2001. Whether his filing with the Army on October 11, 2001 was sufficient or whether the VA received his claim by fax on October 25, 2001 or by fax on November 14, 2001 is immaterial; all of these dates are too late to file a claim arising from the acknowledged failure to inform Mr. Thomas of the potential diagnosis of schizophrenia.

[10] Mr. Thomas also suggests that his Form 9 Appeal to the Board of Veterans Appeals, filed on November 10, 1999, should be deemed a timely FTCA Claim since it met all of the regulatory requirements to be considered an FTCA claim except that it did not contain a sum certain. Pl.'s

timely file an administrative claim, the Court lacks jurisdiction over Mr. Thomas's claims regarding the alleged failure to inform or treat him for schizophrenia, Counts Ia, II, III, and IV, and any unnumbered counts relating to Mr. Thomas's 2001 Claim.[11]

Mr. Thomas argues that the D.C. Circuit has already ruled in his favor on appeal in spite of similar jurisdictional arguments from the VA, and therefore the jurisdictional arguments are barred. This argument mis-reads the record. The Court of Appeals reversed the prior district court opinion but did not address, or rule on, any of the VA's arguments except the one relied on by the district court in the first instance: whether all of the counts in the initial Complaint here constituted a challenge to a VA benefits decision. *See Thomas*, 394 F.3d at 974-75. The Circuit did not rule on whether Mr. Thomas presented his claims to the VA on a timely basis.[12] Moreover, jurisdiction is a defense that can be raised at any time prior to a final ruling on the merits. *See Settles v. United States Parole Comm'n*, 429 F.3d 1098, 1105 (D.C. Cir. 2005). Even when not raised by any party, the Court itself has a duty to ensure its own jurisdiction at any time in a case. *See American Library Ass'n v. FCC*, 401 F.3d 489, 492 (D.C. Cir. 2005). Thus, the VA's jurisdictional arguments are

---

Mem. at 35. This filing fails to contain a sum certain and thus it is in insufficient to present a valid administrative claim. *GAF Corp.*, 818 F.2d at 905.

[11] The VA also argues that Dr. Kelly made no firm diagnosis because Mr. Thomas did not exhibit sufficient symptoms of schizophrenia and that there was no duty to inform him of the non-urgent results of a benefits examination. It presents the declaration of Richard Rosse, M.D., Chief, Psychiatry Service, at the Washington, D.C., VA Medical Center. Dr. Rosse declares that a diagnosis of schizophrenia requires "two or more of the characteristic active phase symptoms of schizophrenia, which include delusions, hallucinations, disorganized speech, grossly disorganized or catatonic behavior, and negative symptoms." Rosse Decl. ¶ 2. Because the Court finds that it lacks jurisdiction, it does not reach this issue.

[12] Further, the Circuit could not have ruled on the claims regarding later events, such as claims regarding Mr. Thomas's visits to Memphis VAMC that were added after remand.

properly before this Court.

Mr. Thomas also moves to strike the VA's motion and exhibits because the exhibits contain very personal private and sensitive medical records and are also "incomplete, unfit, unreliable and/or untrustworthy as evidence" because they involve a veteran's benefit claim. Mr. Thomas also argues that defense Exhibits 15 through 20 "are FTCA claim transfer documents" that were not provided to him in discovery and that are now prejudicial. The Court recognizes that it is without jurisdiction to review the VA's handling of a veteran's benefit claim. *See Thomas*, 394 F.3d at 974-75. However, the documents to which Mr. Thomas objects are presented for purposes of ruling on the timeliness of his FTCA claims and their sufficiency to alert the VA to the nature of his FTCA claims, not for purposes of reviewing any VA benefit decisions. Exhibits 15 through 18 are letters that the Army sent to Mr. Thomas in response to his FTCA claim erroneously filed with the Army in Germany; Exhibit 19 is a copy of the envelope whereby the Army in Germany forwarded Mr. Thomas's claim papers to Fort Meade in Maryland; and Exhibit 20 is a copy of the cover letter whereby the Army sent the file to the VA, with a copy to Mr. Thomas. Inasmuch as Mr. Thomas was the addressee or copied on these materials, the Court finds the VA's reliance on them here — to complete the record — permissible. Indeed, Mr. Thomas himself relies on these same documents. Mr. Thomas's motion to strike will be denied.

## 2. The 2003 Claim Lacked Required Specificity

Mr. Thomas's 2003 Claim alleged that the VA failed to diagnose, disclose, or refer him for treatment from March 1991 to the present for numerous conditions, including among others: photo phobia, muscle spasms, fatigue, joint pain, flexor tender ganglion, myofacial pain, back and musculoskeletal pain, personality disorder, mental stress, anxiety neurosis, schizophrenia, arthralgia,

bronchitis, numbness, post traumatic stress disorder, and depression.  On April 29, 2003, Regional

Counsel Michael Hogan responded and informed Mr. Thomas that "[t]he Attorney's General's

Regulations require that you provide us with certain information and evidence that we need to

process and investigate your claim."  *See* Def.'s Mem., Ex. 44.  The VA sought a complete list of

health care providers outside the VA system who had been caring for Mr. Thomas, those whom he

consulted for symptoms allegedly related to poor care from the VA, a report from his attending

physician concerning the same, and other details.  *Id.*  Receiving no response, Mr. Hogan wrote to

Mr. Thomas on July 1, 2003, denying his claim for failing to provide essential information.  Def.'s

Mem., Ex.45.  Mr. Thomas requested reconsideration by letter dated October 23, 2003, which was

denied by VA Assistant General Counsel E. Douglas Bradshaw, Jr., on November 20, 2003.  Def.'s

Mem., Ex. 46.

        Mr. Thomas's failure to respond to Mr. Hogan's request for more information renders

his administrative exhaustion incomplete and insufficient to support court jurisdiction.  The SF 95

submitted as the 2003 Claim lists specific diseases and conditions but fails to provide information

as to where the alleged torts occurred or when.  The VA contends that "[s]earching all DVA files

nationwide for a 12-year period to determine when and where VA could or should have diagnosed,

referred, treated, or informed [Mr.] Thomas of over twenty medical conditions would be equivalent

to searching for a needle in a haystack."  Def.'s Mem. at 14-15.  The Court agrees.  Mr. Thomas was

obliged to respond to the VA's request for information.  He needed to submit a written statement

sufficiently describing the injury to enable the agency to begin its own investigation.  *Bowden v.*

*United States*, 106 F.3d 433, 441 (D.C. Cir. 1997); *GAF Corp.*, 818 F.2d at 919.  The 2003 FTCA

Claim provided grossly insufficient information for the VA to know who, how, where and when the

alleged malpractice occurred.  Its request for further information was totally ignored by Mr. Thomas, yet his silence prevented administrative processing of his claim.  Since his claim could not be processed due to Mr. Thomas's own conduct, the Court finds that he did not exhaust his administrative remedies and cannot now present this set of claims in litigation.  Counts I.b-k, I.m-n, I.p., and I. r-s, together with all unnumbered counts based on the 2003 Claim, will be dismissed for lack of jurisdiction.

### 3.  Failure to Present Any Claim Based on the July 24, 2003 Visit to VAMC Memphis

Count 1t of the Amended Complaint alleges torts based on a July 24, 2003 medical examination at Memphis VAMC.    The FTCA bars claimants from bringing suit until they have exhausted their administrative remedies, *McNeil*, 508 U.S. at 113, and the VA never received an SF-95 after July 24, 2003 that encompassed this claim.  *See* Def.'s Mem., Ex. 2, Decl. of Baltimore Regional Counsel Frank D. Giorno ¶ 4; Def.'s Mem., Ex. 3, Decl. of Nashville Regional Counsel Tammy L. Kennedy ¶ 5.   Mr. Thomas offers no proof whatsoever to counter these sworn declarations, despite the fact that he bears the burden of establishing that the court has subject matter jurisdiction.  *Evans*, 166 F.3d at 647; *see also McNutt*, 298 U.S. at 182-83. Because Mr. Thomas failed to exhaust his administrative remedies concerning the July 24, 2003, medical examination at Memphis VAMC, the Court is without power to adjudicate this claim.  Count 1t and all unnumbered counts relating to Mr. Thomas's July 2003 visit to Memphis VAMC will be dismissed.

### B.  Failure to Present Expert Testimony In Support of Claims Relating to November 2002 Visits to Memphis VAMC

Mr. Thomas filed a timely FTCA claim associated with his visit to Memphis VAMC on November 4 and 15, 2002, at which time he alleges he was not informed, referred, or warned for

"needed and necessary emergency medical complaints."  First Am. Compl. ¶ 92.  He also alleges that Memphis VAMC put information in his medical records concerning migraine headache, limited motion of cervical spine, allergic or vasomotor rhinitis, degenerative arthritis, prostate gland condition, inflammation of cornea, and Axis IV, without informing him.  *Id.*  This claim was denied by Regional Counsel on June 7, 2005.  Def.'s Mem., Ex. 42.

To establish a *prima facie* case of negligence under Tennessee law,[13] a plaintiff bears the burden of proving (1) the "recognized standard of acceptable professional practice" in the relevant speciality; (2) that the defendant "acted with less than or failed to act with ordinary and reasonable care in accordance with such standard;" and (3) "as a proximate result of the defendant's act or omission, the plaintiff suffered injuries which would not otherwise have occurred."  Tenn. Code § 29-26-115.  "No claim for negligence can succeed in the absence of any one of these elements."  *Kilpatrick v. Bryant*, 868 S.W.2d 594, 598 (Tenn. 1993).

A plaintiff must "prove by expert testimony" all four elements of the negligence standard.  *Hurst by Hurst v. Dougherty*, 800 S.W.2d 183, 185 (Tenn. Ct. App. 1990).  A "plaintiff must offer expert testimony setting forth specific facts demonstrating that a defendant's acts or omissions fell below the recognized standard of care and that those acts or omissions proximately caused the subject injury."  *Norris v. East Tn. Children's Hosp.*, 195 S.W.3d 78, 86 (Tenn. Ct. App. 2005).  Tennessee law also requires that any expert be licensed to practice in the relevant specialty in Tennessee or one of the contiguous border states within one year of when the injury or wrongful act or omission occurred.  Tenn. Code § 29-26-115(b).

---

[13] Tennessee law governs this malpractice claim as Memphis VAMC is located there.  *See Price*, 228 F.3d at 422 (the substantive tort law of the state in which the alleged tort occurred applies to FTCA tort claims); *Tarpeh-Doe*, 28 F.3d at 123 (same).

Mr. Thomas traces the failure to provide medical services to him at Memphis VAMC with his collapse on the airplane returning to Germany and his resulting emotional distress. Whether the VA might have any liability would depend upon whether Mr. Thomas's statements on intake at Memphis VAMC were sufficient to cause a reasonable health care provider to recognize a need for immediate medical attention and, then, whether the failure to provide such attention at MemphisVAMC medically caused his collapse. These points must be made through medical testimony by an experienced physician. Under Tennessee law, they cannot be proved by lay testimony.

Without sufficient evidence to prove the standard of care, that the VA's actions in denying him medical treatment in November 2002 fell below that standard, and that the VA's denial of care was causally connected to his collapse on the airplane, Mr. Thomas cannot sustain his allegations. *See Greene*, 164 F.3d at 675 (nonmoving party may not rely solely on allegations, but must present specific facts that would enable a reasonable jury to find in its favor). Counts I.l, I.o, I.q., and all unnumbered counts based on allegations relating to the November 2002 visit to Memphis VAMC must be dismissed.

## IV.  CONCLUSION

The results here are compelled by federal and Tennessee state law. A claimant under the FTCA must file his claim within two years of its accrual. Although he received the SOC on October 9, 1999, the very earliest date on which it might be said that Mr. Thomas filed an FTCA claim based on the failure-to-inform him of Dr. Kelly's potential schizophrenia diagnosis is October 11, 2001, more than two years later. Because timely presentation of a claim is jurisdictional, the Court must dismiss all allegations based on the failure to inform of a schizophrenia diagnosis. In

addition to complying with the two-year requirement, a claimant must provide sufficient information for the relevant agency to investigate and respond.  Mr. Thomas failed to respond to VA's request for specific information concerning his malpractice claim that spanned a dozen years and over a dozen medical conditions.  His inaction and silence prevented the VA from processing his claim on the merits and, therefore, he did not fulfill his duty to exhaust his administrative remedies.  Further, there is no record that Mr. Thomas ever filed an FTCA claim arising from his July 23, 2004, visit to Memphis VAMC and, therefore, he also failed to exhaust his administrative remedies therewith.  Finally, the VA is entitled to summary judgment on Mr. Thomas's allegations concerning the failure of Memphis VAMC to provide medical treatment to him in November 2002.  Tennessee law requires expert testimony to support his malpractice claim, and Mr. Thomas offers none.

Defendant's motion to dismiss or for summary judgment [Dkt. # 121] will be granted and the First Amended Complaint will be dismissed.  Plaintiff's motion to strike [Dkt. #145] will be denied, and all other pending motions will be denied as moot.  A memorializing order accompanies this Memorandum Opinion.


DATE: March 20, 2008                            _____/s/_____
                                                ROSEMARY M. COLLYER
                                                United States District Judge